## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST | : | **CASE NO. 12-MD-02311** |
| LITIGATION | : | **HON. MARIANNE O BATTANI** |
| | : | |
| | : | |
| In Re: STARTERS | : | **Case No. 2:13-cv-01101-MOB-MKM** |
| | : | |
| | : | **Case No. 2:14-cv-10674-MOB-MKM** |
| THIS RELATES TO: | : | |
| | : | |
| ALL DIRECT PURCHASER ACTIONS | : | |
| | : | |

### DIRECT PURCHASER PLAINTIFF'S MOTION FOR FINAL
### APPROVAL OF PROPOSED SETTLEMENTS WITH THE
### <u>MITSUBISHI ELECTRIC, HIAMS, MITSUBA, AND DENSO DEFENDANTS</u>

Direct Purchaser Tiffin Motor Homes, Inc., hereby moves the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlements with the MITSUBISHI ELECTRIC Defendants, the HIAMS Defendants, the MITSUBA Defendants, and the DENSO Defendants. In support of this motion, Plaintiff relies on the accompanying memorandum of law, which is incorporated by reference herein.

DATED: July 26, 2019     Respectfully submitted,

           /s/David H. Fink_____
          David H. Fink (P28235)
          Darryl Bressack (P67820)
          Nathan J. Fink (P75185)
          FINK BRESSACK
          38500 Woodward Ave; Suite 350
          Bloomfield Hills, MI 48304
          Telephone: (248) 971-2500

          *Interim Liaison Counsel for the Direct*
          *Purchaser Plaintiff*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
    & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
    & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 238-1700

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST | : | CASE NO. 12-MD-02311 |
| LITIGATION | : | HON. MARIANNE O BATTANI |
| | : | |
| | : | |
| In Re: STARTERS | : | Case No. 2:13-cv-01101-MOB-MKM |
| | : | |
| | : | Case No. 2:14-cv-10674-MOB-MKM |
| THIS RELATES TO: | : | |
| | : | |
| ALL DIRECT PURCHASER ACTIONS | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS WITH
THE MITSUBISHI ELECTRIC, HIAMS, MITSUBA, AND DENSO DEFENDANTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

STATEMENT OF ISSUES PRESENTED................................................................. vi

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................ vii

INTRODUCTION ...................................................................................................... 1

I.      BACKGROUND ................................................................................................ 1

II.     TERMS OF THE SETTLEMENT AGREEMENTS......................................... 3

III.    THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE
AND SHOULD BE APPROVED BY THE COURT........................................ 5

        A.     The Governing Standards. ..................................................................... 5

        B.     The Proposed Settlements are Fair, Reasonable, and Adequate............ 6

               1.     The Class Representative and Class Counsel Have Adequately
Represented the Class, and the Settlement Was Reached at Arm's Length.
................................................................................................................ 8

               2.     The Relief Provided to the Class is Adequate. ........................................ 10

                     a.     The Costs, Risks, and Delay of Trial and Appeal. ............................ 11

                     b.     The Effectiveness of Any Proposed Method of Distributing Relief to
the Class, Including the Method of Processing Class Member Claims,
if Required. ....................................................................................... 14

                     c.     The Terms of Any Proposed Award of Attorney's Fees, Including
Timing of Payment. ........................................................................... 15

                     d.     There Are No Separate Agreements Relating to the Proposed
Settlements. ....................................................................................... 15

               3.     The Settlements Treat Class Members Equitably Relative to
Each Other. ............................................................................................. 15

               4.     The Settlements are Consistent with the Public Interest............................. 16

IV.    NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE
PROCESS ..................................................................................................... 16

V.     CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT CLASSES FOR
PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENTS IS
APPROPRIATE.............................................................................................. 18

i

A.      The Proposed Direct Purchaser Settlement Classes Satisfy Rule 23(a). .............. 20

    1.      The Settlement Classes are Sufficiently Numerous................................. 21

    2.      There are Common Questions of Law and Fact. ..................................... 21

    3.      Plaintiff's Claims are Typical of Those of the Settlement Classes........... 22

    4.      Plaintiff Will Fairly and Adequately Protect the Interests of the Classes. 23

B.      Plaintiff's Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement
    Purposes. ......................................................................................................... 24

    1.      Common Legal and Factual Questions Predominate............................... 24

    2.      A Class Action is Superior to Other Methods of Adjudication. ............... 25

VI.      CONCLUSION.................................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................. 20, 24, 26
*Barry v. Corrigan,*
    2015 WL 136238 (E.D. Mich. Jan 9, 2015) ................................................ 21, 23
*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) ............................................................................. 24
*Berry v. Sch. Dist. of City of Benton Harbor,*
    184 F.R.D. 93 (W.D. Mich. 1998) ..................................................................... 10
*Carson v. Am. Brands, Inc.,*
    450 U.S. 79 (1981) ............................................................................................. 10
*Date v. Sony Electronics, Inc.,*
    2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) .................................... 13, 20, 22
*Dick v. Sprint Commc'ns,*
    297 F.R.D. 283 (W.D. Ky. 2014) ....................................................................... 5, 9
*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,*
    2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ................................................ 21
*Ford v. Fed.-Mogul Corp.,*
    2015 WL 110340 (E.D. Mich. Jan. 7, 2015) ............................................... 11, 13
*Granada Invs. Inc. v. DWG Corp.,*
    962 F. 2d 1203 (6th Cir. 1992) .......................................................................... 16
*Griffin v. Flagstar Bancorp, Inc.,*
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ..........................................Passim
*Hadix v. Johnson,*
    322 F.3d 895 (6th Cir. 2003) ............................................................................. 16
*Hillson v. Kelly Servs. Inc.,*
    2017 WL 279814 (E.D. Mich. 2017) ................................................................. 16
*Hoving v. Lawyers Title Ins. Co.,*
    256 F.R.D. 555 (E.D. Mich. 2009) .................................................................... 24
*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) ............................................................................. 21
*In re Auto. Refinishing Paint Antitrust Litig.,*
    617 F. Supp. 2d. 336 (E.D. Pa. 2007) ................................................................. 9
*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) ..............................................................Passim
*In re Cardizem CD Antitrust Litig,*
    200 F.R.D. 297 (E.D. Mich. 2007) .................................................................... 26
*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,*
    2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) .................................................... 9
*In re Flat Glass Antitrust Litig.,*
    191 F.R.D 472 (W.D. Pa. 1999) ........................................................................ 22

*In re Flonase Antitrust Litig.*,
284 F.R.D. 207 (E.D. Pa. 2012) ......................................................................... 26

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004)........................................................................... 9

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ......................................................................... 14

*In re Insurance Brokerage Antitrust Litig.*,
297 F.R.D. 136 (E.D. Pa. 2013) ......................................................................... 17

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................. 4, 12

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y 1996)........................................................................... 26

*In re Packaged Ice Antitrust Litig.*,
2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ............................................. Passim

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)................................................. 9, 11

*In re Polyurethane Foam Antitrust Litig.*,
2015 WL 1639269 (N.D. Ohio Feb. 26, 2015), appeal dismissed ....................... 7, 8

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008)........................................................................... 24, 25

*In re Southeastern Milk Antitrust Litig.*, 2:07-cv-208,
2013 WL 2155379 (E.D. Tenn. May 17, 2013) ................................................... 9

*In re Southeastern Milk Antitrust Litig.*,
2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ................................................... 24

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013)....................................................................... 20, 21, 22

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
2006 WL 1984363 (E.D. Mich. July 13, 2006).............................................. Passim

*IUE-CWA v. General Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006)................................................................... 6, 11

*Lessard v. City of Allen Park*,
372 F. Supp. 2d 1007 (E.D. Mich. 2005) ............................................................. 11

*Marsden v. Select Medical Corp.*,
246 F.R.D. 480 (E.D. Pa. 2007) ......................................................................... 21

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................................................... 17

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006) ......................................................................... 6

*Olden v. Gardner*,
294 Fed. Appx. 210 (6th Cir. 2008) ................................................................... 11

*Paper Systems Inc. v. Mitsubishi Corp.*,
193 F.R.D. 601 (E.D. Wisc. 2000) ..................................................................... 26

*Senter v. Gen. Motors Corp.*,
532 F.2d 511 (6th Cir. 1976)............................................................................. 23

*Sheick v. Auto. Component Carrier LLC*,
2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ................................... 6, 11, 12, 13

*Sheick v. Automotive Component Carrier LLC*,
   2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ............................................ 9, 23
*Sims v. Pfizer, Inc.*,
   2016 WL 772545 (E.D. Mich. Feb. 24, 2016) ........................................... 11
*Smith v. MCI Telecoms Corp.*,
   1993 WL 142006 (D. Kan. April 28, 1993) ............................................. 14
*Sprague v. General Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ............................................................ 20, 21, 22
*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ............................................................. 6
*Thacker v. Chesapeake Appalachia, LLC*,
   259 F.R.D. 262 (E.D. Ky. 2009) ........................................................ 20
*UAW v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ........................................................... 5, 7, 17, 23
*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) ........................................................... 10
*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ........................................................... 11, 13

**Statutes**

28 U.S.C. § 1715 ................................................................................. 3

**Rules**

Fed. R. Civ. P. 23(a)(2) ........................................................................ 21, 22
Fed. R. Civ. P. 23(b)(3) ........................................................................ Passim
Fed. R. Civ. P. 23(c)(2)(B) ..................................................................... 17
Fed. R. Civ. P. 23(e)(1)(A) ..................................................................... 2
Fed. R. Civ. P. 23(e)(1)(B) ..................................................................... 2
Fed. R. Civ. P. 23 ............................................................................. Passim
Fed. R. Civ. P. 23(a) .......................................................................... 20, 24
Fed. R. Civ. P. 23(a)(1) ........................................................................ 21
Fed. R. Civ. P. 23(a)(3) ........................................................................ 22, 23
Fed. R. Civ. P. 23(a)(4) ........................................................................ 23, 24
Fed. R. Civ. P. 23(b) .......................................................................... 20, 24
Fed. R. Civ. P. 23(c)(3) ........................................................................ 17
Fed. R. Civ. P. 23(e) .......................................................................... 6, 7, 17
Fed. R. Civ. P. 23(e)(1) ........................................................................ 16, 17
Fed. R. Civ. P. 23(e)(2) ........................................................................ 2, 6, 7, 8
Fed. R. Civ. P. 23(e)(3) ........................................................................ 7
Fed. R. Civ. P. 23(g) .......................................................................... 23

## STATEMENT OF ISSUES PRESENTED

1.  Whether the proposed settlements between the Direct Purchaser Plaintiff and Defendants (a) Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. (collectively, the "MITSUBISHI ELECTRIC Defendants"); (b) Hitachi Automotive Systems, Ltd. ("HIAMS") for HIAMS, Hitachi, Ltd., and Hitachi Automotive Systems Americas, Inc. (collectively, the "HIAMS Defendants"); (c) DENSO Corporation, DENSO International America, Inc., DENSO Korea Corporation (f/k/a separately as DENSO International Korea Corporation and DENSO Korea Automotive Corporation), DENSO Automotive Deutschland GmbH, DENSO Products & Services Americas, Inc. (f/k/a DENSO Sales California, Inc.), ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc., and ASMO Manufacturing, Inc. (collectively, the "DENSO Defendants"); and (d) MITSUBA Corporation and American Mitsuba Corporation (together, the "MITSUBA Defendants") (all Defendants referenced in this paragraph, collectively, the "Settling Defendants"), as set forth in the Settlement Agreements between the Direct Purchaser Plaintiff and the respective Settling Defendants, are fair, reasonable, and adequate, and whether the Court should approve the settlements under Fed. R. Civ. P. 23; and

2.  Whether the Court should certify the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Settlement Classes for purposes of the settlements only.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
        521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.,*
        12-MD-02311, 2:12-cv-00103, ECF No. 497 (E.D. Mich. June 20, 2016)

*Date v. Sony Electronics, Inc.*,
        No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.,*
        No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
        218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
        248 F.R.D. 483 (E.D. Mich. 2008)

*In re Packaged Ice Antitrust Litig.*,
        No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
        No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
        527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
        722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
        No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950)

*Sheick v. Auto. Component Carrier LLC*,
        No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
        133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
        137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
        497 F.3d 615 (6th Cir. 2007)

Fed. R. Civ. P. 23(c)(2)(B)

Fed. R. Civ. P. 23(e)(1), (e)(2)

## INTRODUCTION

Tiffin Motor Homes, Inc. ("Plaintiff"), on behalf of Settlement Classes comprised of direct purchasers of Starters in the United States, has reached settlements with the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants. Under the terms of the proposed settlements, the Settling Defendants will pay a total of $10,865,004 (the four settlement funds will be collectively referred to as the "Starters Settlement Fund")[1] and provide cooperation to assist Plaintiff in the prosecution of the claims against the non-settling Defendants.[2]

For the reasons set forth herein, Plaintiff respectfully submits that the proposed settlements are fair, reasonable, and adequate, and should be approved by the Court. Submitted herewith are proposed Orders and Final Judgments agreed to by Plaintiff and the Settling Defendants.[3]

## I.   BACKGROUND

In February 2014, Plaintiff filed a class action lawsuit[4] against Defendants on behalf of direct purchasers of "Starters."[5] Plaintiff alleges that Defendants conspired to raise, fix, maintain, and stabilize prices, rig bids, and allocate the supply of Starters sold in the United States, in

---

[1] As discussed in Section II of this Memorandum, the MITSUBISHI ELECTRIC Settlement is subject to rescission based upon valid and timely requests for exclusion by members of the MITSUBISHI ELECTRIC Settlement Class.

[2] In light of the settlements with the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants, the Defendants remaining in this litigation are the Robert Bosch Defendants, which shall hereinafter be referred to as the "non-settling Defendants."

[3] A separate motion for an award of attorneys' fees and reimbursement of litigation expenses is being filed today with the Court.

[4] *Tiffin Motor Homes, Inc. v. DENSO Corporation, et al.,* 2:14-cv-10674, ECF No. 1 (E.D. Mich. Feb. 13, 2014).

[5] The meaning of the term "Starters" is defined in each settlement agreement, but generally includes electric motors that are used to start internal combustion engines.

violation of federal antitrust laws. Plaintiff further alleges that as a result of the conspiracy, it and other direct purchasers of Starters were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct, and Plaintiff seeks recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

On September 18, 2018, the Court preliminarily approved settlements with the MITSUBISHI ELECTRIC and HIAMS Defendants for $6,754,285 and $1,368,462, respectively. (2:13-cv-01101, ECF Nos. 94, 95). On November 5, 2018, the Court preliminarily approved a settlement with the MITSUBA Defendants in the amount of $2,642,257. (2:13-cv-01101, ECF. No. 97). On April 24, 2019, as amended May 23, 2019, the Court preliminarily approved a settlement with the DENSO Defendants in the amount of $100,000.00. (2:13-cv-01101, ECF Nos. 109, 112). These settlement funds, totaling $10,865,004, plus accrued interest, have been placed into an interest-bearing escrow account. For each settlement, the Court also provisionally certified a proposed settlement class of direct purchasers of Starters pursuant to Fed. R. Civ. P. 23(b)(3).

Recent amendments to Rule 23 (effective December 1, 2018) require that "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of [a proposed settlement] to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice "is justified by the parties' showing that the court will likely be able to: (1) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). By Order dated June 6, 2019, the Court authorized the Direct Purchaser Plaintiff to disseminate notice of proposed settlements with the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants, the fairness hearing, and related matters to the Settlement Classes (the "Notice Order"). (2:13-cv-01101, ECF No. 116).

Pursuant to the Notice Order, on June 27, 2019, 4,665 copies of the Notice of Proposed Settlements of Direct Purchaser Class Action with the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants and Hearing on Settlement Approval and Related Matters (the "Notice") were mailed, postage prepaid, to all potential members of the Settlement Classes identified by Defendants. Further, on July 1, 2019, a Summary Notice of Proposed Settlements of Direct Purchaser Class Action with MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants and Hearing on Settlement Approval and Related Matters (the "Summary Notice") was published in *Automotive News*; additionally, an online banner notice appeared over a 21-day period on www.AutoNews.com, the digital version of *Automotive News*, and an Informational Press Release was issued nationwide via PR Newswire's "Auto Wire," which targets auto industry trade publications. Finally, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com.[6]

The deadline for submission of objections to the proposed settlements and request for an award of attorneys' fees, litigation costs and expenses, and for requests for exclusion from the Settlement Classes, is August 16, 2019. To date, there have been no objections to the proposed settlements or to the requests for attorneys' fees and litigation expenses, or any requests for exclusions.

## II.   TERMS OF THE SETTLEMENT AGREEMENTS

Plaintiff, on behalf of the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Settlement Classes, entered into settlements with the MITSUBISHI ELECTRIC ($6,754,285),

---

[6] Counsel for MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO have informed Settlement Class Counsel that their clients fulfilled their obligations under 28 U.S.C. § 1715 (the "Class Action Fairness Act of 2005"), by disseminating the requisite notice to the appropriate federal and state officials (MITSUBISHI ELECTRIC – July 10, 2018; HIAMS – July 3, 2018; MITSUBA – June 21, 2019; and DENSO – April 11, 2019).

HIAMS ($1,368,462) MITSUBA ($2,642,257), and DENSO ($100,000) Defendants totaling $10,865,004.[7] Additionally, the Settling Defendants have agreed to cooperate with respect to the non-settling Defendants.

The nature and extent of the cooperation agreed to by the Settling Defendants is described in detail in their respective Settlement Agreements, copies of which are on file with the Clerk of Court and available on-line at www.autopartsantitrustlitigation.com. Generally, however, in addition to the cash payments, each Settling Defendant has agreed to provide some forms of cooperation that may include: (a) the production of documents, data, and other information potentially relevant to Plaintiff's claims; (b) assistance in understanding information produced to Plaintiff and facilitating the use of such information at trial; (c) meetings between Settlement Class Counsel and Settling Defendants' counsel who will provide information relevant to the claims in this litigation; (d) witness interviews; (e) depositions; (f) declarations; and (g) trial testimony. As stated in *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003), such cooperation provisions provide a "substantial benefit" to the class and "strongly militate[] toward approval of the Settlement Agreement." This cooperation will enhance and strengthen Plaintiff's prosecution of their claims against the remaining Defendants.

In exchange for the settlement payments and cooperation, the proposed settlements provide, *inter alia,* for the release by Plaintiff, and the other Settlement Class members, of "Released Claims" against the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants and other "Releasees" (as defined in the respective Settlement Agreements). The

---

[7] As set forth at pages 2 and 4 of the Notice, the MITSUBISHI ELECTRIC and MITSUBA settlements are subject to rescission based upon valid and timely requests for exclusion by members of the MITSUBISHI ELECTRIC and MITSUBA Settlement Classes. Plaintiff will provide the Court with a report on opt-outs and the impact, if any, upon the Starters Settlement Fund, after the opt-out deadline and prior to the Fairness Hearing.

Released Claims are antitrust and similar claims arising from the conduct alleged in the Complaint. The releases specifically exclude certain claims against the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants including claims: based upon indirect purchases of Starters; based on negligence, personal injury, or product defects; relating to purchases of Starters outside the United States; and concerning any product other than Starters.

Moreover, all of the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants' sales to Settlement Class members remain in the case as a potential basis for joint and several liability and damages against other current or future Defendants in the litigation.

Plaintiff believes that the proposed settlements are fair, reasonable, and adequate to the Settlement Classes. The Settlement Agreements were consummated only after extensive arm's-length negotiations between experienced and sophisticated counsel. They are the result of good faith negotiations, after factual investigation and legal analysis by experienced counsel, and are based upon the attorneys' full understanding of the strengths and weaknesses of their respective positions. Plaintiff respectfully submits that each of the proposed MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO settlements merits final approval.

## III.   THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.   The Governing Standards.

A court has broad discretion in deciding whether to approve a class action settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007). In exercising this discretion, courts give considerable weight and deference to the views of experienced counsel as to the merits of an arm's-length settlement. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation."). Indeed, a "presumption of fairness, adequacy, and

reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that a judge reviewing a settlement should not "substitute his or her judgment for that of the litigants and their counsel." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). In light of the uncertainties and risks inherent in any litigation, courts take a common-sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *15 (E.D. Mich. Oct. 18, 2010) (citation omitted). Moreover, a district court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

### B.     The Proposed Settlements are Fair, Reasonable, and Adequate.

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and on finding that the settlement is "fair, reasonable, and adequate." *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011). The 2018 amendments to Rule 23(e) sets forth a list of factors for a court to consider before approving a proposed settlement. The factors are whether:

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

      (i)      the costs, risks, and delay of trial and appeal;

      (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Historically, courts in the Sixth Circuit have considered factors comparable to those in Rule 23(e)(2) in determining whether a settlement should be approved. *See In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 9280050, at *5 (E.D. Mich. Nov. 28, 2016) (considering (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest). *Accord UAW*, 497 F.3d at 631; *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-MD-2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), appeal dismissed (Dec. 4, 2015). The Advisory Committee Notes to Rule 23 acknowledge these judicially created standards, explaining that the newly enumerated Rule 23(e) factors are "core concerns" in every settlement and were not intended to displace a court's consideration of other relevant factors in a particular case. Fed. R. Civ. P. 23 Advisory Committee Note (2018 Amendment).

As discussed more fully below, the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO settlements are fair, reasonable, and adequate under the relevant criteria, and should be approved under Rule 23(e)(2).

> 1. **The Class Representative and Class Counsel Have Adequately Represented the Class, and the Settlement Was Reached at Arm's Length.**

The first two factors of Rule 23(e)(2) (adequate representation by the class representative and class counsel and whether the settlement was reached at arm's length) are procedural and focus on the history and conduct of the litigation and settlement negotiations. Fed. R. Civ. P. 23 Advisory Committee Note. Relevant considerations may include the experience and expertise of plaintiff's counsel, the quantum of information available to counsel negotiating the settlement, the stage of the litigation and amount of discovery taken, the pendency of other litigation concerning the subject matter, the length of the negotiations, whether a mediator or other neutral facilitator was used, the manner of negotiation, whether attorney's fees were negotiated with the defendant and if so how they were negotiated and their amount, and other factors that may demonstrate the fairness of the negotiations. *Id.*

The Plaintiff and Settlement Class Counsel have adequately represented the Proposed Settlement Class in connection with the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO settlements, and the litigation in general. The Plaintiff's interests are the same as those of the Settlement Class members, and Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated this settlement at arm's length with well-respected and experienced counsel for the Settling Defendants. There is a presumption that settlement negotiations were conducted in good faith and

that the resulting agreement was reached without collusion. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick v. Automotive Component Carrier LLC,* No. 09-14429, 2010 WL 3070130, at *19-20 (E.D. Mich. Aug. 2, 2010). Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate . . . .") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-cv-208, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336, 341 (E.D. Pa. 2007).

The negotiations that led to the settlements were at all times conducted at arm's length and took months to complete. Although there has been no formal discovery in this action, the defendants produced to Plaintiff hundreds of thousand of pages of documents, which were copies of the documents they produced to the Department of Justice ("DOJ"). Plaintiff also received substantial cooperation from a leniency applicant pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act, Pub. L, No. 108-237, § 213(b), 118 Stat. 661, 666-668 (June 22, 2004). In addition, relevant information about the Starters conspiracy was obtained from Defendants and through Settlement Class Counsel's investigation.[8] This information and

---

[8] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6. The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *3 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)). *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188, at *13 (E.D. Mich. Dec. 13, 2011) (absence of formal discovery

Settlement Class Counsel's legal analysis allowed Settlement Class Counsel to evaluate not only the strengths and weaknesses of the legal case, but also the potential value of the promised cooperation by the Settling Defendants.

Because the proposed settlements were negotiated at arm's length by experienced counsel knowledgeable about the facts and the law, consideration of these factors fully supports final approval of the settlements.[9]

## 2.      The Relief Provided to the Class is Adequate.

The relief provided to the class consists of cash payments by the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants totaling $10,865,004, together with substantial cooperation in the continued prosecution of the claims against the non-settling Defendants. Settlement Class Counsel believe that the cash and cooperation is adequate relief for the Settlement Classes.

Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981). There are two reasons for this. First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *Telectronics,* 137 F. Supp. 2d at 1008-09 (citing *Manual (Third)* § 30.42). This is particularly true in the case of class actions. *Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998).

---

not an obstacle to settlement approval).  As explained above, Plaintiff had adequate information about the facts from defendants' DOJ productions and their cooperation.

[9]  There was no negotiation of attorney's fees. As noted above, a motion seeking an award of attorney's fees and expenses will be filed today.

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *See, e.g., In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, ECF No. 497, at 11 (E.D. Mich. June 20, 2016) (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013)). *Accord Sims v. Pfizer, Inc.*, No. 1:10-cv-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016). A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich,* 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

### a.   The Costs, Risks, and Delay of Trial and Appeal.

When considering the adequacy of the relief to the class in determining the fairness of a class action settlement, the court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp*., 238 F.R.D. 583, 594 (E.D. Mich. 2006)); *Ford*, 2006 WL 1984363, at *21; *Ford v. Fed.-Mogul Corp*., No. 2:09-cv-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015). These risks must be weighed against the settlement consideration: here the certainty of cash payments by the MITSUBISHI ELECTRIC ($6,754,285), HIAMS ($1,368,462) MITSUBA ($2,642,257), and DENSO ($100,000) Defendants totaling $10,865,004, together with

cooperation by each of the Settling Defendants, which is valuable to the Settlement Class members as they continue to litigate against the non-settling Defendants. *See Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 12 ("cooperation strongly militates toward approval" of the settlements) (quoting *Linerboard*, 292 F. Supp. 2d 643).

Settlement Class Counsel believe that the settlements are an excellent result. Weighing the settlements' benefits against the risks and costs of continued litigation tilts the scale toward approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9. Plaintiff is optimistic about the likelihood of ultimate success in this case, but success is not certain. As this Court has previously noted, success is not guaranteed even in those instances where a settling defendant has pleaded guilty in a criminal proceeding brought by the Department of Justice. That is because, among other things, the DOJ is not required to prove class-wide impact or damages, both of which require complex and expensive expert analyses, and the outcome of litigating those issues is uncertain. *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 11.

The MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants are each represented by highly experienced and competent counsel. They undoubtedly would deny Plaintiff's allegations of liability and damages, vigorously oppose Plaintiff's motion for class certification, and assert a number of defenses., Plaintiff believes the Settling Defendants are prepared to defend this case through trial and appeal. Risk is inherent in any litigation, and this is particularly true with respect to class actions. So, while optimistic about the outcome of this litigation, Plaintiff must acknowledge the risk that some or all of the Settling Defendants could prevail with respect to certain legal or factual issues, which could reduce or eliminate any potential recovery.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (quoting *Vukovich,* 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. 2d at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

Plaintiff is still litigating with the non-settling Defendants, so it is not appropriate to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation as those Defendants could seek to use any such disclosures against Plaintiff going forward. Settlement Class Counsel believe that at this point it is sufficient to state that complex antitrust litigation of this scope has certain inherent risks that the settlement at least partially negates.

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Delphi*, 248 F.R.D. at 498. Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9. "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922-23).

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated the settlements at arm's length with

well-respected and experienced counsel for the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants. Settlement Class Counsel believe that the proposed settlements eliminate the risks, expense, and delay with respect to a recovery from the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Defendants, ensure a substantial payment to the Settlement Classes, and provide the Settlement Class with cooperation that will be used to pursue the claims against the remaining Defendants. This factor also supports preliminary approval of the proposed settlement.

> **b. The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims, if Required.**

This case does not present any difficulties in identifying claimants or distributing settlement proceeds. Consistent with the practice in previously approved *Automotive Parts Antitrust Litigation* direct purchaser settlements, Settlement Class Counsel presently intend to propose that the net settlement funds be distributed pro rata to approved claimants. Claims will be processed using a settlement claims administrator to review claim forms, to assist Settlement Class Counsel in making recommendations to the Court concerning the disposition of those claims, and to mail checks to approved claimants for their pro-rata shares of the net settlement funds.

As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Smith v. MCI Telecoms Corp.*, No. Civ. A. 87-2110-EEO, 1993 WL 142006, at *2 (D. Kan. April 28, 1993); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 12.35, at 350 (4th ed. 2002) ("Newberg") (noting that pro-rata allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in

many antitrust class actions"). This Court, and numerous others, have approved similar pro-rata distribution plans. *See, e.g.,* 2:12-cv-00601, ECF No. 172; 2:12-cv-00101, ECF No. 572). This factor supports final approval.

### c. The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment.

The Settlement Agreements provide that attorney's fees shall be paid solely out of the settlement funds subject to court approval, and that final approval of the settlement is not contingent on the outcome of any petition for attorney's fees. Settlement Class Counsel are seeking attorney's fees of approximately 30% of the settlement funds, consistent with previous fee petitions and awards approved by this Court in the *Automotive Parts Antitrust Litigation.* This factor supports preliminary approval.

### d. There Are No Separate Agreements Relating to the Proposed Settlements.

The Settlement Agreements (and confidential letter pertaining to rescission of the MITSUBISHI ELECTRIC and MITSUBA settlements) reflect all of the agreements and understandings relating to the proposed settlements, and there are no separate agreements that would affect the settlement amounts, the eligibility of class members to participate in the settlements or exclude themselves from them, or the treatment of class member claims. This factor is therefore neutral.

### 3. The Settlements Treat Class Members Equitably Relative to Each Other.

Class members will be treated equitably relative to each other in terms of their eligibility for a pro-rata portion of the settlement funds and their right to opt-out of the Settlement Classes. Likewise, each class member gives the same releases.

The Agreements do contemplate that Settlement Class Counsel may seek an incentive award for the class representative, as has been done in other cases. Such awards are justified as an incentive and reward for the efforts that lead plaintiffs take on behalf of the class. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). The settlements were provided to the class representative for its review and approval without any discussion of incentive awards, which evinces that the prospect of such an award was not the reason the representative Plaintiff approved it. *Hillson v. Kelly Servs. Inc.*, 2017 WL 279814, at *6 (E.D. Mich. 2017). Plaintiff submits that this factor supports final approval.

### 4.   The Settlements are Consistent with the Public Interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.,* 962 F. 2d 1203, 1205 (6th Cir. 1992). *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. Plaintiff submits that there is no countervailing public interest that provides a reason to disapprove the proposed settlements. *Griffin*, 2013 WL 6511860, at *5. This factor also supports approval.

Consideration of the above factors supports final approval of the proposed MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO settlements. Settlement Class Counsel respectfully submit that the proposed settlements are in the best interests of the Settlement Classes and should be finally approved.

## IV.   NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE PROCESS

Federal Rule of Civil Procedure 23 provides that, "upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) [ ] the

court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). *Accord In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (E.D. Pa. 2013). In addition, the "notice must clearly and concisely state in plain, easily understood language:" (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The notice program and forms of notice utilized by Plaintiff satisfy these requirements. The Notice sets forth all information required by Rule 23(c)(2)(B) and 23(e)(1), and also informs members of the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Settlement Classes that Settlement Class Counsel will seek an award of reasonable attorneys' fees and litigation expenses.

Pursuant to the Notice Order, on June 27, 2019, 4,665 copies of the Notice were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants as their direct customers of Starters. The Summary Notice was published in *Automotive News* on July 1, 2019; an online banner notice appeared over a 21-day period on www.AutoNews.com, the digital version of *Automotive News*; and an Informational Press Release targeting automotive industry trade

17

publications was issued nationwide via PR Newswire's "Auto Wire." Finally, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com.[10]

The content and method for dissemination of notice fulfill the requirements of Federal Rule of Civil Procedure 23 and due process.

## V.    CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT CLASSES FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENTS IS APPROPRIATE

In preliminarily approving the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO settlements, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of the proposed settlements only, the following Settlement Classes:

The MITSUBISHI ELECTRIC Settlement Class[11] is defined as follows:

> All individuals and entities who purchased Starters in the United States directly from one or more Defendants (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through March 12, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

2:13-cv-01101, ECF No. 94.

The HIAMS Settlement Class[12] is defined as follows:

---

[10] Consistent with Paragraph 13 of the Notice Order, a declaration or affidavit confirming that notice was disseminated to the Settlement Classes in accordance with the Preliminary Approval and Notice Order will be filed at least 10 days prior to the Fairness Hearing.

[11] For purposes of the MITSUBISHI ELECTRIC Settlement Class definition, the following entities are Defendants:  DENSO Corporation; DENSO International America, Inc.; Mitsubishi Electric Corporation; Mitsubishi Electric US Holdings, Inc.; Mitsubishi Electric Automotive America, Inc.; Hitachi Ltd.; Hitachi Automotive Systems, Ltd.; Hitachi Automotive Systems Americas, Inc.; Mitsuba Corporation; American Mitsuba Corporation; and Robert Bosch GmbH.

[12]  For purposes of the HIAMS Settlement Class definition, "Defendant" includes, but is not limited to, the following entities:  Hitachi Automotive Systems, Ltd.; Hitachi Automotive Systems Americas, Inc.; Hitachi, Ltd.; DENSO Corporation; DENSO International America,

> All individuals and entities who purchased Starters in the United States directly from Defendants (or their subsidiaries or affiliates) from January 1, 2000 through March 12, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

2:13-cv-01101, ECF No. 95.

The MITSUBA Settlement Class[13] is defined as follows:

> All individuals and entities who purchased Starters in the United States directly from one or more Defendants (or their subsidiaries, affiliates, or joint-ventures) from January 1, 2000 through March 12, 2018. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies, and instrumentalities.

2:13-cv-01101, ECF No. 97.

The DENSO Settlement Class[14] is defined as follows:

> All individuals and entities who purchased Starters in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through March 12, 2018. Excluded from the Settlement Class are Defendants, their

---

Inc.; MITSUBA Corporation; American Mitsuba Corporation; Mitsubishi Electric Corporation; Mitsubishi Electric Automotive America, Inc.; and Robert Bosch GmbH.

[13] For purposes of the MITSUBA Settlement Class definition, the following entities are Defendants: DENSO Corporation; DENSO International America, Inc.; Hitachi, Ltd.; Hitachi Automotive Systems, Ltd.; Hitachi Automotive Systems Americas, Inc.; MITSUBA Corporation, American Mitsuba Corporation; Mitsubishi Electric Corp.; Mitsubishi Electric Automotive America, Inc.; and Robert Bosch GmbH.

[14] For purposes of the DENSO Settlement Class definitions, the Defendants are: DENSO Corporation; DENSO International America, Inc.; Hitachi Automotive Systems, Ltd.; Hitachi, Ltd.; Hitachi Automotive Systems America, Inc.; American Mitsuba Corp.; MITSUBA Corp.; Mitsubishi Electric Corp.; Mitsubishi Electric Automotive America, Inc.; Robert Bosch GmbH; Nikko Electric Indus., and any of their parents, subsidiaries, and affiliates.

> present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

2:13-cv-01101, ECF Nos. 109, 112.

It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 24; *Cardizem,* 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[15]

As demonstrated below, the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Settlement Classes meet all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

A.     **The Proposed Direct Purchaser Settlement Classes Satisfy Rule 23(a).**

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

---

[15]   Each of the Preliminary Approval Orders provides that provisional certification of the relevant Settlement Class will be without prejudice to the rights of any Defendant to contest certification of any other class proposed in these coordinated actions. (2:13-cv-01101, ECF Nos. 94, 95, 97, 109, 112). *See also Packaged Ice*, 2011 WL 717519, at *7.

### 1.   The Settlement Classes are Sufficiently Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason. *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity). Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, copies of the Notice were mailed to 4,665 entities, geographically dispersed throughout the United States, that were identified by Defendants as potential direct purchasers of Starters. This provides a useful gauge for the Court to conclude that there are likely more than 4,000 potential Settlement Class members.  Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2.   There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class." "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 2015 WL 136238, at *13 (E.D. Mich. Jan 9, 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the

commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 *NEWBERG ON CLASS ACTIONS,* § 18.05-15 (3d ed. 1992)). Here, whether Defendants entered into an illegal agreement to artificially fix prices of Starters is a factual question common to all members of the Settlement Classes because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 25. Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on members of the Settlement Classes. *Packaged Ice*, 2011 WL 717519, at *6 (commonality requirement satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity, focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484. Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3.    Plaintiff's Claims are Typical of Those of the Settlement Classes.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Plaintiff's claims arise from the same course of conduct as the claims of the other Settlement Class members: Defendants' alleged violations of the antitrust laws. Plaintiff and the other members of

the Settlement Classes are proceeding on the same legal claim, alleged violations of Section 1 of the Sherman Antitrust Act. *See UAW*, 497 F.3d at 625; *Barry v. Corrigan*, No. 13-cv-13185, 2015 WL 136238, at *13 (E.D. Mich. Jan. 9, 2015). Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

> **4.     Plaintiff Will Fairly and Adequately Protect the Interests of the Classes.**

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining whether the representation of the class will be adequate: (1) the representatives must have common interests with the unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Sheick v. Automotive Component Carrier LLC,* No. 09-14429, 2010 WL 3070130, at *3 (E.D. Mich. Aug. 2, 2010) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here. The interests of the proposed representative of the Settlement Classes – Tiffin Motor Homes, Inc. – are common to those of other Settlement Class members. Plaintiff is a direct purchaser of Starters from a Defendant in the United States. Plaintiff and the other Settlement Class members claim that they were injured as a result of the alleged conspiracy and seek to prove that Defendants violated the antitrust laws. Plaintiff's interests are thus aligned with those of the Settlement Classes.

Moreover, Plaintiff has retained qualified and experienced counsel to pursue this action.[16] Settlement Class Counsel vigorously represented Plaintiff and the Settlement Classes in the

---

[16] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman & Kodroff, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* direct purchaser cases. They submit

settlement negotiations with each of the Settling Defendants and have vigorously prosecuted this action. Adequate representation under Rule 23(a)(4) is therefore satisfied.

**B.    Plaintiff's Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.**

In addition to satisfying Rule 23(a), Plaintiff must show that the proposed class action falls under at least one of the three subsections of Rule 23(b). Here, each of the Settlement Classes qualifies under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

**1.    Common Legal and Factual Questions Predominate.**

Rule 23(b)(3)'s requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive" to warrant certification. *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question. *Scrap Metal*, 527 F.3d at 535; *Automotive Parts*, 2:12-cv-00103, ECF No. 497, at 27; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-cv-208, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn.

---

that, for the same reasons that the Court appointed them to that position, their appointment as Settlement Class Counsel is appropriate.

Sept. 7, 2010). Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation . . . will not vary among class members' . . . . Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied." 527 F.3d at 535 (emphasis in original).

In this case the same set of core operative facts and theory of liability apply to each member of the Settlement Classes. As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Starters is a question common to all Settlement Class members because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects. *See, e.g., Packaged Ice*, 2011 WL 717519, at *6. If Plaintiff and the other Settlement Class members were to bring their own individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. Therefore, common proof of Defendants' violations of antitrust law will predominate.

### 2. A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

All Starters litigation is centralized in this Court. If a Settlement Class member wants to control its own litigation, it can request exclusion from any or all of the Settlement Classes. Thus, consideration of factors (1) – (3) demonstrates the superiority of a class action.

With respect to the factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a trial of the case because the settlement will end the litigation without a trial. *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Classes are not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own." *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)). Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all members of the Settlement Class. *E.g., Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury."). The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *In re NASDAQ Market-Makers Antitrust Litig*., 169 F.R.D. 493, 527 (S.D.N.Y 1996). Thus, class litigation is superior to the alternatives in this case.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO settlements, and certify the MITSUBISHI ELECTRIC, HIAMS, MITSUBA, and DENSO Settlement Classes for purposes of the settlements only.

DATED: July 26, 2019                               Respectfully submitted,

                                          /s/David H. Fink
                                          David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiff*

| | |
|---|---|
| Steven A. Kanner | Joseph C. Kohn |
| William H. London | William E. Hoese |
| Michael E. Moskovitz | Douglas A. Abrahams |
| FREED KANNER LONDON | KOHN, SWIFT & GRAF, P.C. |
|    & MILLEN LLC | 1600 Market Street, Suite 2500 |
| 2201 Waukegan Road, Suite 130 | Philadelphia, PA  19103 |
| Bannockburn, IL  60015 | Telephone: (215) 238-1700 |
| Telephone: (224) 632-4500 | |
| | |
| | |
| Gregory P. Hansel | Eugene A. Spector |
| Randall B. Weill | William G. Caldes |
| Michael S. Smith | Jeffrey L. Spector |
| PRETI, FLAHERTY, BELIVEAU | SPECTOR ROSEMAN & KODROFF, P.C. |
|    & PACHIOS LLP | 2001 Market Street, Suite 3420 |
| One City Center, P.O. Box 9546 | Philadelphia, PA  19103 |
| Portland, ME  04112-9546 | Telephone: (215) 496-0300 |
| Telephone: (207) 791-3000 | |

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 26, 2019, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to all counsel

of record registered for electronic filing.

FINK BRESSACK

By: /s/Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI  48304
Telephone: (248) 971-2500
nfink@finkbressack.com

28